112    21
a210s 176

## Chicago Landlords' Protective Bureau v. Martin C. Koebel, et al.

### Gen. No. 11,097.

1.   CORPORATE NAME—*right to protection of, in equity.*   A corporate
name used in connection with a business enterprise is a thing of value,
and its imitation by another corporation engaged in a like business, in
such manner as to deceive the public, will be restrained by injunction.
Exact similitude is not a condition to relief; it is enough if the likeness
is such as to be calculated to deceive the public.

2.   CORPORATE NAME—*when imitation of, will be enjoined.*   The use
of the name " Landlords' Protective Department" will be enjoined at
the instance of a corporation, prior in right, employing the name " Chi-
cago Landlords' Protective Bureau."

3.   CORPORATE NAME—*what not essential to restrain imitation of.*   It
is not essential to the right to enjoin the use of a corporate name that
it appear that the intention of the defendant in adopting the imitative
name was fraudulent or wrongful; and, it is no defense that at the time
of the adoption of such name the defendant was ignorant of the
plaintiff's existence.

Bill to enjoin infringement of corporate name.   Appeal from the
Superior Court of Cook County; the Hon. JESSE HOLDOM. Judge, pre-
siding.   Heard in this court at the March term, 1903.   Reversed and
remanded, with directions.   Opinion filed January 25, 1904.

JOHN F. HOLLAND, for appellant.

ALBERT B. GEORGE, for appellees.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Appellant, a corporation, filed a bill August 28, 1902, against Martin C. Koebel and Frank O. Campe, appellees, praying that the appellees be enjoined from representing, pretending and claiming to be associated or connected with appellant in any manner, and from circulating, in any manner, stationery, circulars, pamphlets or advertising matter, upon which shall be printed the title "Landlords' Protective Department," or any similar combination of words in which the words "Landlords' Protective" appear. The court, on the filing of the bill, granted a preliminary injunction. The appellees, September 5, 1902, filed an answer to the bill, to which appellant replied. The cause was heard on evidence produced in open court, and, November 5, 1902, the court dissolved the preliminary injunction and dismissed the bill for want of equity. Appellant's certificate of complete organization was issued November 10, 1886, and its corporate object is thus stated in its articles of incorporation: "The object of said corporation shall be to collect and compile the names of persons who have proven unsatisfactory and troublesome tenants, and to have been a cause of vexation and expense to their landlords, and for general reference, use and information as to the status, payment of rent, care of property, and whether a desirable, good, bad or pestiferous tenant, and to publish and maintain a list of such renters for the information and protection of landlords and its patrons and to aid and assist such landlords to recover possession of their property." The location of its principal office is stated to be "Chicago, Illinois." It has conducted the business for which it was incorporated ever since its incorporation. Its offices in Chicago are at 232 W. Division street, 332 Blue Island avenue, 100 Washington street, and 371 Larrabee street, the last being its main office. Its

method of doing business is to sell to a person a membership in the corporation for the sum of $10, which membership entitles the purchaser thereof to the services of the corporation in collecting rents, evicting bad tenants, and general care of his interest as a landlord. Appellant also did business for persons not members, who, on payment to it of $5 each, became entitled to its services in evicting tenants.

Appellant expended, originally, in establishing its business, about $10,000, and spent yearly in advertising its business from $1,000 to $2,000. Its business is worth between $4,000 and $5,000 yearly, and, at the time of the hearing, it had done business for about 7,000 persons. The appellees are not incorporated. They inaugurated the "Landlords' Protective Department" February 1, 1901. On the back of a printed pamphlet issued by appellees about February 1, 1902, are, in large letters, the words, "Landlords' Protective Department," and underneath said words, in small letters, are the words, "Campe Commercial Agency." On page 5 of the pamphlet is the following:

"The five objects of the Landlords' Protective Department:

1. To give landlords legal advice with reference to all disputes between themselves and their tenants. 2. To eject undesirable tenants for failure to pay rent, or for other reasons. 3. To advise and render legal services with reference to all general taxes, special assessments, tax sales and tax redemptions. 4. To give advice and render legal services with reference to city ordinances and violations. 5. To give advice and render legal services in mechanics' lien cases and disputes between landlords and tenants."

This and other evidence in the case shows that the business of the appellees includes such business as that of appellant. On page 6 of the pamphlet, and immediately following the matter above quoted, this appears: "We charge a membership fee of one ($1) dollar, which entitles the member to free legal advice on all matters growing out of the five objects aforementioned."

The following appears on page 7 of the pamphlet: "On receipt, at our office, of the one dollar membership fee, we

send you a membership certificate which runs for one year, beginning one month after receipt by us of the membership fee."

A receipt issued by appellees, which was put in evidence, is as follows:

"CHICAGO, ILLINOIS, June 4, 1902.

Received of Mr. Charles Ruge one dollar, entitling him to one year membership in the 'Landlords' Protective Department' of the Campe Commercial Agency, including all privileges and benefits of said department.

LANDLORDS' PROTECTIVE DEPARTMENT,
per W. E. GRAY."

A certificate of membership of Charles G. Ruge was also put in evidence, headed, in large printed capitals, "Campe Commercial Agency," next under which words are, in smaller capitals, the words "Landlords' Protective Department," and next below the last words, "422–423–424 Ashland Block, Chicago." The certificate is signed in the following printed names: "Campe Commercial Agency, Landlords' Protective Department," the former words being in capitals and the latter not. In writing, after the word "Department," is written: "Campe." Similar certificates were issued to persons applying for membership, on payment of the usual fee.

Appellees used a business card about four and one-half by two and three-quarter inches in size, on which was the following:

"Tel. Main 2625.
LANDLORDS' PROTECTIVE DEPARTMENT.
Campe Commercial Agency.
422–423–424 Ashland Block, N. E. Cor. Randolph & Clark Sts.
W. E. GRAY, Special Representative.    Chicago.
Over."

On the back of the card is the following:
"How it Protects.
The five objects of the department:
1.  Free legal advice with reference to disputes between landlord and tenant.
2.  Ejecting undesirable tenants for failure to pay rent, or other reasons.

3.   Free legal advice with reference to all general taxes, special assessments, tax sales and tax redemptions.

4.   Free legal advice with reference to city ordinances or violations thereof.

5.   Free legal advice in all mechanics' lien cases and disputes between owners and contractors.

MEMBERSHIP FEE $1.00 A YEAR.        NO ASSESSMENTS."

Pencil marks are drawn through the name "A. E. Cooper" on the face of the card.

The words "Landlords' Protective Department" on the card are in much larger letters than are the words next under them.

Persons who had done business with appellant testified that its reputation for fair dealing is good.   Appellant's name, connected as it is with a profitable business, established and maintained at large expense, and with a good reputation for fair dealing, is of great value to it, and consequently, any such imitation of its name as is likely to mislead the public, by inducing them to believe that the business of the imitator is appellant's business, is injurious to appellant.

Exact similitude is not required as a condition of relief. It is enough that the similitude is such as to be calculated to mislead the public.   Browne on Trade-Marks, 2nd Ed., sec. 33.   "Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another," and   "a similarity which would be likely to deceive or mislead an ordinary, unsuspecting customer is obnoxious to the law."   Celluloid Manufac'g Co. v. Cellonite Manufac'g Co., 32 Fed. R. 94.   The name "Landlords' Protective Bureau" is appellant's corporate name.   Appellees have adopted the name "Landlords' Protective Department."   The words "Landlords' Protective" are the most significant and distinguishing words in each name, and a person looking at both names at the same time, might, not unnaturally, suppose that the "Landlords' Protective Department" was a mere department of the "Landlords' Protective Bureau."   Names less similar to the name sought to be protected have been held to be im-

itations calculated to deceive and mislead. Browne on Trade-Marks, sec. 33, citing numerous instances.

Appellant proved by a number of witnesses, whose testimony is not contradicted, that numerous persons, to whom the appellees had issued certificates of membership in the Landlords' Protective Department, applied at offices of appellant for aid and assistance, under the impression that the business of the "Landlords' Protective Department" was appellant's business, and, in at least one case, it was difficult to persuade the applicant that it was not. It was also testified by several witnesses that W. E. Gray, whose name is on the card above mentioned, and who was appellees' agent for the purpose of soliciting persons to become members of the "Landlords' Protective Department," represented to them, in substance, that the business appellee was doing was appellant's. Charles Ruge, to whom Gray delivered a certificate of membership in appellees' "Department," testified: "I asked him, I said, 'Is that in connection with this concern on Division street?' He said, 'Yes, sir.' I says, 'Then I am on the safe side.' He says, 'That is merely a branch office of ours, and the main office is down town in the Ashland Block.' I said 'All right,' and I paid the dollar and got the receipt." Two other witnesses testified to the same effect. W. E. Gray and appellee Campe were the only witnesses for appellees. Gray received for his services in procuring persons to become members of appellees' concern, the one dollar fee paid by each member secured by him. Assuming his testimony to be true, it shows him to possess a rather singular memory. While not denying that he had conversations with the persons whose testimony is last above referred to, nor that he issued to them certificates of membership, nor that he conversed with them, he testified that he did not recognize any of them as persons with whom he had spoken, they being present in court. He testified, generally, that he did not remember any of their faces, and did not remember making to any of them the statements or representations to which they testified; that he did not deny meeting them and re-

ceiving money from them and giving them receipts, if they had receipts in his name, and did not deny handing them cards; that he did not deny these things, because he did not remember especially; but he positively denied that he ever represented to any person that the Landlords' Protective Department had any connection with appellant, and that he based this denial on the simple statement that he never said so to anybody. Appellee Campe testified that he did not know of the Landlords' Protective Bureau until five or six months before the hearing, which occurred November 5, 1902, and did not know it was in existence when he established the Landlords' Protective Department; that he never instructed any of appellees' agents to represent to persons whom they solicited to become members, that appellees were, in any way, connected with the Landlords' Protective Bureau; but that, as soon as he began to hear of the similarity of the names, he warned appellees' agents against representing themselves as the appellant. It thus appears that appellee Campe himself recognized that the similarity of names was likely to mislead. It is not necessary to entitle appellant to relief for it to appear that the intention of appellees, in adopting the name, was fraudulent or wrongful, and the absence of fraudulent intention is no defense. Browne on Trade-Marks, sec. 386, and cases cited; Hopkins' Fair Trade, sec. 115. Nor is it any defense that appellees, when they adopted their name, were ignorant of appellant's existence. 2 High on Injunc., 3d ed., sec. 1087. In this case the names are so similar as to be calculated and likely to mislead, and the proof is that the similarity actually misled. The name which has been imitated by appellees is appellant's corporate name. In Newby v. The Oregon Central R. Co., Deady, 609, the court say, p. 616: "Under the law the corporate name is a necessary element of the corporation's existence. Without it, a corporation cannot exist. Any act which produces confusion or uncertainty concerning this name is well calculated to injuriously affect the identity and business of a corporation. And as a matter of fact, in some de-

gree at least, the natural and necessary consequence of the wrongful appropriation of a corporate name, is to injure the business and rights of the corporation by destroying or confusing its identity. The motives of the persons attempting the wrongful appropriation are not material. They neither aggravate nor extenuate the injury caused by such appropriation. The act is an illegal one and must, if necessary, be presumed to have been done with an intent to cause the results which naturally flow from it."

The decree is manifestly against the weight of the evidence. Therefore it will be reversed and the cause remanded, with direction to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded, with directions.*